UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-cr-00384-HEA-SPM |
| | ) | |
| NICHOLAS H. HAGLOF, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO
THE DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND FOR
SUPPRESSION OF THE FRUITS OF UNLAWFULLY OBTAINED STATEMENTS**

Comes now the United States of America, by and through its Attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Jillian S. Anderson, Assistant United States Attorney for said District, and files this memorandum in opposition to the Defendant's motion to suppress, and states as follows:

## I.    PROCEDURAL & FACTUAL BACKGROUND

On August 1, 2020, a Complaint was sworn against Defendant Haglof charging him with one count of receiving child pornography in violation of Title 18, United States Code, Section 2252A (a)(2) and a warrant was issued by the Hon. Nannette A. Baker for the arrest of the Defendant (Docs. 1, 9).  On August 5, 2020, an Indictment was filed charging the Defendant with one count of receiving child pornography in violation of Title 18, United States Code, Section 2252A (a)(2) and a second count of accessing with the intent to view child pornography in violation of Title 18, United States Code, Section 2252A (a)(5) (Doc. 10).

1

The following facts are based upon the reports and records pertaining to the investigation that gave rise to the aforementioned indictment of the Defendant and may be limited to only those facts relevant to the Defendant's motion to suppress statements and evidence.  The investigation of Defendant Haglof was a joint effort of the St. Louis County Police Department and the Federal Bureau of Investigation (FBI).  On November 12, 2019, Microsoft Online Operations made a CyberTipline Report to the National Center for Missing and Exploited Children ("NCMEC") indicating that the internet-based search engine "Bing" had been used to possess or attempt to possess multiple items of child pornography on November 10, 2019. These items of child pornography included, but are not limited to, an image depicting the sexual abuse of a prepubescent child who is placed in red and black thigh-high tights and who was positioned on her knees with her legs spread in a manner subjecting her to a photograph of her naked vagina and anus.

The Internet Protocol address utilized to possess the child pornography at issue in the CyberTipline report was used at a residence occupied at the time by Defendant Haglof, his wife and infant daughter.  On January 27, 2020, Charter Communications informed law enforcement that the Internet Protocol address at issue was assigned to an account registered to the Defendant's wife with an address in the 1400 block of Brookside Drive in High Ridge, Missouri, from September 28, 2019 to January 12, 2020.  On July 28, 2020, AmerenUE confirmed for law enforcement that utility services for that same address were registered to the Defendant's wife from June of 2017 through June of 2020.  AmerenUE further informed law enforcement that the forwarding address for that account was a residence in the 500 block of Goldwood Drive in Ballwin, Missouri.  An inquiry of law enforcement databases revealed to law enforcement that

the defendant and his wife were married in October of 2018, that the defendant moved with his wife into the residence (in the 500 block of Goldwood Drive) belonging to the parents of his wife in June of 2020, and that the Defendant and his wife purchased a home in Ballwin in July of 2020.  This law enforcement database inquiry also revealed that the Defendant was employed as a police officer for the Maryland Heights Police Department.

Records obtained by the United States Attorney's Office from the Eastern Missouri Law Enforcement Academy indicate that the Defendant graduated from the police academy in July of 2016.  During his time in the Academy, the Defendant received a grade of 97 in his Constitutional Law class and a grade of 97 in his Criminal Investigation class.  The Defendant graduated with a final grade point average of 95.95.  The Defendant took an Introduction to Criminal Justice course in the Fall of 2010 at St. Louis Community College.  In 2010 and 2011, when the Defendant was eighteen and nineteen years of age, the Defendant was the target of three separate criminal investigations for driving while intoxicated, possession of drug paraphernalia and being a minor in possession of alcohol.  During one or more of these criminal investigations and the ensuing criminal prosecutions the Defendant was represented by counsel, advised of his *Miranda* rights and acknowledged these rights in writing.

During the Defendant's time as a police officer with the Maryland Heights Police Department, the Defendant administered *Miranda* rights to suspects in criminal investigations he was conducting.  On December 3, 2019, the Defendant administered *Miranda* rights to a suspect in an investigation involving the flourishing of a firearm (MHPD 19-07743).  On December 12, 2019, the Defendant administered *Miranda* rights to a suspect in a discharge of a firearm investigation (MHPD 19-07942).  On December 12, 2019, the Defendant administered *Miranda*

rights to a suspect in a shoplifting investigation (MHPD Report 19-06943).  On January 18, 2020, the Defendant provided *Miranda* rights twice to a suspect in an investigation involving another unlawful flourishing of a firearm (MHPD Report 20-00333). On January 26, 2020, the Defendant administered *Miranda* rights to a suspect in a drug investigation (MHPD 20-00553). On February 14, 2020, the Defendant provided *Miranda* rights to s suspect in an assault investigation (MHPD 20-00961).  On March 10, 2020, the Defendant administered *Miranda* rights to a suspect in a second drug investigation (MHPD 20-01478).  On April 21, 2020, the Defendant provided *Miranda* rights to a suspect in a heroin possession case (MHPD 20-01877). On June 7, 2020, the Defendant administered *Miranda* rights to a suspect in a drug investigation involving amphetamines (MHPD 20-02387).  On July 3, 2020, the Defendant provided *Miranda* rights to a suspect in another assault investigation (MHPD 20-02689).

On July 31, 2020, Det. Amy Erwin with the St. Louis County Police Department contacted the Defendant's wife at the residence she had purchased with the Defendant.  The Defendant's wife informed Det. Erwin that she and the Defendant possessed multiple laptop computers that they had moved with them from their previous address in the 1400 block of Brookside Drive in High Ridge. The Defendant's wife told Det. Erwin that the laptops she and the Defendant owned were located in the residence of her parents in the 500 block of Goldwood Drive in Ballwin.  The Defendant's wife consented to retrieving the laptops computers and keeping them in a location where law enforcement could maintain surveillance to prevent tampering until a search warrant was obtained.  The Defendant was not present when this interview was conducted as he was being interviewed at the Maryland Heights Police Department where he was working.

A search warrant was obtained from the Circuit Court for St. Louis County for the residence in the 500 block of Goldwood Drive in Ballwin where the Defendant resided with his wife.  The FBI conducted forensic analysis on a Hewlett-Packard laptop belonging to Defendant Haglof that was seized during the execution of the search warrant.  The Windows 10 Home operating system on the laptop was registered to "nhhaglof327@gmail.com" with the usernames "nhhag" and "Nick Haglof."  Analysis of the web browser history on the laptop revealed that in November of 2019, the laptop was used to access the email account "nhaglof327@gmail.com." Additionally, the laptop was used in November of 2019 to access websites related to the St. Louis County and Municipal Police Academy; Defendant Haglof was employed as a police officer with the Maryland Heights Police Department at that time.   Most importantly, it was determined that the laptop had been used to traffic child pornography.  Between August of 2019 to February of 2020, the laptop was used to visit websites such as "amateur cocksuckers part 2 ....bonus for 69 - Random - 4chan" and "Teen training Porn Pics & Porn GIFs."  A review of the image files on the laptop revealed approximately four hundred and twenty-one (421) images of confirmed child pornography that were found to have been downloaded and then later deleted. These images involved juvenile boys and girls subjected to prurient and lascivious displays of their genitals and subjected to abusive sexual contact, including but not limited to the following images that were contained in the Indictment of the defendant:

a.      an image file depicting two prepubescent male minors who appear to be under the age of twelve years with their mouths on one another's genitals;

5

b.      an image file depicting two prepubescent female minors who appear to be under the age

of twelve years with their hands on the penis of a prepubescent male minor who also appears to

be under the age of twelve; and

c.      an image file depicting four prepubescent male minors who appear to be under the age of

twelve with their hands on their own and one another's genitals.

       In a recorded interview with law enforcement On July 31, 2020, the Defendant admitted

that he had been looking at child pornography since "probably right out of high school."

Defendant Haglof agreed that child pornography was a big problem with him.  He explained that

he feels guilty about having child pornography and that he doesn't "…like to consider that they

are young, its like I put it out of my mind."  But defendant Haglof confirmed that he is "…into

girls that are obviously younger than the norm" and that he believes that "some of the gals are

just better to look at than older gals."  Defendant Haglof confirmed that he did use the Bing

search engine to search for child pornography.  Defendant Haglof acknowledged that he needs

help.

       The Defendant spoke with law enforcement on two significant occasions on July 31,

2020, relevant to the investigation that gave rise to the present indictment.  Initially, he spoke

with Sgt. Adam Kavanaugh and Det. Stephanie Stoehner, who are police officers employed by

the St. Louis County Police Department where they are assigned to the Special Investigation's

Unit.  The Defendant spoke with Sgt. Kavanaugh and Det. Stoehner in a conference room of the

Maryland Heights Police Department, where the Defendant was employed and on duty at the

time.  The interview began with Det. Stoehner letting Defendant Haglof know that his bosses at

the Police Department said it was "cool" for she and Sgt. Kavanaugh to come talk with

6

Defendant Hagloff and inquiring if he was "cool" with that as well.  Defendant Haglof responded

"yeah" and inquired if everything was okay.  Defendant Haglof was assured that everybody in

his family was fine.  The Defendant was informed that Det. Stoehner was working a case that

had to do with Defendant Haglof's old neighborhood and the interview continued with Sgt.

Stoehner asking the Defendant questions about his recent residential history and electronics that

he had possessed.  The Defendant's interview with Det. Stoehner was a total of approximately

forty minutes in duration.  Five minutes and twenty seconds into that interview, the Defendant

was advised of his *Miranda* rights by Det. Stoehner.  The Defendant then continued to speak

with Det. Stoehner and Sgt. Kavanaugh.  During the interview the Defendant claimed that he

owned no electronics except for his cellular telephone (in contrast to the information being

simultaneously received by Det. Erwin from the Defendant's wife during their conversation at

the residences in Ballwin).  The Defendant repeatedly refused Det. Stoehner's request for

consent to search his cellular telephone.  The Defendant also refused Det. Stoehner's request for

the password to his cellular telephone.

   During the initial five minutes and twenty seconds of the Defendant's interview with Det.

Stoehner that occurred prior to the verbal advisement of the Defendant's *Miranda* rights, the

Defendant told Sgt. Kavanaugh and Det. Stoehner information that they had already received

from Charter Communications, AmerenUE and law enforcement databases: that he had lived at a

residence in the 1400 block of Brookside Drive in High Ridge until June of 2020, that he was

residing with his in-laws at their residence in the 500 block of Goldwood Drive and planned to

move into the residence in Ballwin that he had just purchased earlier in July of 2020.

Simultaneously, law enforcement was receiving this same information from the Defendant's wife

7

who was being interviewed at their residences in Ballwin. The affidavit supporting the search warrant issued for the residence in the 500 block of Goldwood Drive contained the Defendant's statements about moving from his prior residence in the 1400 block of Brookside Drive to his current residence in the 500 block of Goldwood Drive. The search warrant affidavit also contained this same residential history as gleaned by law enforcement from Charter Communications, AmerenUE, law enforcement databases and the Defendant's wife.

At about thirty-three minutes into his interview with Sgt. Kavanaugh and Det. Stoehner the Defendant revisited his *Miranda* rights.  The Defendant referenced the *Miranda* rights form and explained that he didn't feel comfortable talking anymore.  Sgt. Kavanaugh responded by inquiring whether the Defendant was asking for a lawyer.  The Defendant stated that if it means he does not have to talk about the subject matter of the interview anymore, then he will take a lawyer.

Subsequent to the conclusion of the Defendant's interview with Sgt. Kavanaugh and Det. Stoehner, the Defendant remained in the Maryland Heights Police Department conference room and was with Det. Andrew Lucca for about an hour during which time they made casual conversation about subjects unrelated and immaterial to the ongoing child pornography investigation.  Det. Lucca was employed by the Maryland Heights Police Department, but detached to the Special Investigation's Unit of the St. Louis County Police Department.  Det. Lucca did not ask the Defendant any questions about the case and advised the Defendant multiple times that the Defendant did not have to talk to him about any aspects of the case. However, there came a point at which the Defendant told Det. Lucca that he wanted to provide his side of the story and his version of events related to the child pornography investigation.

8

After the Defendant requested to speak with Det. Lucca about the investigation, Det. Lucca turned on a recorder.  Det. Lucca confirmed that the Defendant had earlier invoked his right to an attorney, but that he had told Det. Lucca that he wanted to speak about the investigation and to explain his version of events related to this case of child pornography.  The Defendant verbally confirmed that this was accurate.  The Defendant further confirmed that Det. Lucca had not threatened the Defendant nor promised him anything.  The Defendant characterized Det. Lucca as having been "really nice."  During the course of the interview, the Defendant requested water and was promptly given water.  When the Defendant inquired about a break, Det. Lucca told the Defendant it was fine to take a break.   During the course of this interview, the Defendant admitted that he had been looking at child pornography and that it was a big problem for which he acknowledged that he needs help.

While in jail prior to being released on bond the Defendant spoke with his wife on the recorded telephone line from the jail and during these conversations the Defendant wanted his wife to know that "the facts are bad," that it is "[his] fault" and that he is "really sorry for putting [her] through all of this."

## I.    ANALYSIS AND CONCLUSIONS OF LAW

In his motion to suppress statements and for suppression of the fruits of unlawfully obtained statement, the Defendant argues that the statements made by the Defendant in the five minutes and twenty second prior to receiving his *Miranda* warnings should be suppressed and that the statements he gave to Det. Lucca should be suppressed.  The Defendant further requests that physical evidence consisting of a Hewlett-Packard laptop computer containing evidence of the Defendant's receipt and possession of child pornography that was found pursuant to a

residential search warrant be suppressed as fruit of the poisonous tree because the affidavit in support of the search warrant contained statements made by Defendant Haglof in the five minutes and twenty seconds prior to receiving his *Miranda* warnings. The Government contends that there were no violations of the Constitutional rights of Defendant Haglof and therefore, suppression is unwarranted.

**A.   The initial five minutes and twenty seconds of Defendant Haglof's interview with Det. Stoehner were neither custodial nor coercive and furthermore, the search warrant that led to the discovery of Defendant Haglof's child pornography was based on sufficient evidence independent of Defendant's Haglof's statements.**

The first five minutes and twenty seconds of the interview between Det. Stoehner and Defendant Haglof was not custodial.  Statements made to law enforcement officers during custodial interrogation are subject to the protections and procedures identified in *Miranda v. Arizona*, 384 U.S. 436, 477-78 (1966). *See United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (en banc). "Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody ...." *Illinois v. Perkins*, 496 U.S. 292, 296 (1990) "Custody" occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way.  *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990) *citing Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966) *and Berkemer v. McCarty*, 468 U.S. 420, 429, 104 S.Ct. 3138, 3144–45, 82 L.Ed.2d 317 (1984).  To determine whether a particular suspect is "in custody," courts must examine the extent of the physical or psychological restraints placed on the suspect during questioning by the

police in light of whether a reasonable person in the suspect's position would have understood that he or she was in custody. *Griffin*, 922 F.2d at 1347, *citing Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151 *and United States v. Carter*, 884 F.2d 368, 370 (8th Cir.1989). In other words, the inquiry before this Court is whether 1) Defendant Haglof believed his freedom of action was restricted to the degree of being under formal arrest, and, if so, 2) based on the totality of the circumstances, was that belief reasonable from the viewpoint of an objectively reasonable person in Defendant Haglof's position. *See, Griffin*, *supra*, at 1347. Factors the Court should consider include: (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning. *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990). During the very brief minutes of time prior to being Mirandized, the Defendant was asked if he was "cool" with talking to Sgt. Kavanaugh and Det. Stoehner and replied that he was. The Defendant was in the conference room of his place of employment with which he would have been very familiar and comfortable. There were no strong-arm tactics or deceptive strategies used by Sgt. Kavanaugh or Det. Stoehner. An objectively reasonable person in the Defendant's situation would not have felt his freedom of action was restricted to the degree of being under

formal arrest during the first five minutes and twenty second of his interview with Sgt.
Kavanaugh and Det. Stoehner.

Even assuming, for the sake of argument, that the Court suppresses the statements made
by Defendant Haglof in the first five minutes and twenty second of his interview with Det.
Stoehner, there would be no basis to suppress the evidence stemming from the search warrant for
the Defendant's residence in the 500 block of Goldwood Drive.  The remedy for a violation of a
suspect's right against self-incrimination is to suppress the statements, but not to suppress
physical evidence obtained as a result of those statements unless it is demonstrated that the
statements were coerced or involuntary.  *United States v. Patane*, 542 U.S. 630, 631, 124 S. Ct.
2620, 2622-23, 159 L. Ed. 2d 667 (2004) ("Unlike actual violations of the Self–Incrimination
Clause, there is, with respect to mere failures to warn, nothing to deter and therefore no reason to
apply *Wong Sun's* 'fruit of the poisonous tree' doctrine").  In addition, suppression of the
physical evidence seized in the search warrant is unwarranted as there was ample independent
sources for the probable cause supporting that search warrant.  A search warrant issued based
partially on tainted evidence, but also based on evidence sufficient for probable cause that
stemmed from lawful and untainted independent sources and was sufficient to justify the
issuance of s warrant, is valid and does not support the suppression of any evidence.  *See United
States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004).  Probable cause to search "exists when
there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a
crime will be found in the place to be searched." *United States v. Murphy*, 69 F.3d 237, 241 (8th
Cir.1995).  In issuing a warrant, the judge makes a "practical, common-sense decision" whether,
considering all the circumstances, a reasonable person would have reason to suspect evidence

would be discovered. *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir.1996) (*citing Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).  In the case of the search warrant for the residence in the 500 block of Goldwood Drive, there was adequate probable cause to support the search warrant even without the statements of the Defendant.  Therefore, there is no legal basis for suppression of any physical evidence regardless of the Court's ruling on the suppression of the Defendant's statements to Det. Stoehner.

> **B.  The Defendant's interview with Det. Lucca did not violate his Constitutional rights as the Defendant reinitiated communication with the police and knowingly and intelligently waived his *Miranda* rights.**

After a suspect receives *Miranda* warnings, law enforcement is free to interrogate the suspect. *Davis v. United States*, 512 U.S. 452, 458, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). However, if a suspect who is in custody invokes his right to an attorney, the interrogation must cease until counsel is made available or the suspect initiates further communication, exchanges, or conversation with the police.  *Maryland v. Shatzer*, 559 U.S. 98, 104, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010) *citing Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) *and Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

Assuming, *arguendo*, that the Court finds that at the time he was interviewed by Det. Lucca, Defendant Haglof was in custody and had made a clear invocation of his right to counsel, there was no violation of Defendant Haglof's Constitutional rights during the Defendant's interview with Det. Lucca as Defendant Haglof knowingly and intelligently waived his rights and initiated further communication with Det. Lucca about the criminal investigation.  In

*Oregon v. Bradshaw*, the Supreme Court explained that admissibility of statements made after invocation of a defendant's right to counsel is to be determined by a two-step analysis: 1) the Court must determine whether the defendant initiated further conversation, and then 2) the Court must determine whether defendant's waiver of his rights was knowing and intelligent under the totality of the circumstances. *Oregon v. Bradshaw*, 462 U.S. 1039, 1045–46, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). *See also, Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378 (1981).

When the Defendant confirmed to Sgt. Kavanaugh that he was requesting a lawyer, questioning by Sgt. Kavanaugh and Det. Stoehner ceased. The Defendant remained at the Maryland Heights Police Department where he engaged in immaterial small talk with Det. Lucca, but was not questioned or communicated with about the ongoing child pornography investigation. It was the defendant's statement to Det. Lucca that he wanted to reinitiate communication about the investigation and to share his side of the story that was the impetus for further discussion about the criminal investigation into the Defendant's possession of child pornography. Initiation by a suspect occurs when the suspect evinces "a willingness and a desire for a generalized discussion about the investigation." *Oregon v. Bradshaw, supra*, at 1045–46 *and Arizona v. Roberson*, 486 U.S. 675, 687, 108 S. Ct. 2093, 2101, 100 L. Ed. 2d 704 (1988) ("[a]s we have made clear, any 'further communication, exchanges, or conversations with the police' that the suspect himself initiates are perfectly valid (internal citations omitted)); *see also, Holman v. Kemna*, 212 F.3d 413, 417 (8th Cir.2000), cert. denied, 531 U.S. 1021, 121 S.Ct. 587, 148 L.Ed.2d 502 (2000) *and Owens v. Bowersox*, 290 F.3d 960, 963 (8th Cir. 2002).

14

Having established that Defendant Haglof reinitiated communication about the child pornography investigation with Det. Lucca, the Court must also determine whether the Defendant waived his right to counsel and his right to silence, in other words whether the Defendant's waiver was knowing and intelligent and found to be so under the totality of the circumstances. *See Edwards v. Arizona*, 451 U.S. at 486. This determination depends "upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *North Carolina v. Butler*, 441 U.S. 369, 374–375, 99 S.Ct. 1755, 60 L.Ed. 2d 286 (1979) *quoting Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *See also Edwards v. Arizona*, 451 U.S., at 482–483, 101 S.Ct., at 1883–1884 *and United States v. Boyd*, 180 F.3d 967, 977 (8th Cir. 1999). Where the police made no threats, promises or inducements to talk, where a suspect was properly advised of his rights and understood them and where after requesting an attorney the changed his mind without any impropriety on the part of the police, there is no Constitutional violation or need for suppression of statements. *Oregon v. Bradshaw*, 462 U.S. 1039, 1046, 103 S. Ct. 2830, 2835, 77 L. Ed. 2d 405 (1983); *see also, Holman v. Kemna*, 212 F.3d 413, 417 (8th Cir. 2000).

At the time Det. Lucca spoke with Defendant Haglof about the child pornography investigation, Defendant Haglof had been orally advised of his *Miranda* rights, acknowledged them, received a written *Miranda* rights form, and successfully invoked his *Miranda* rights. Defendant also had a substantial familiarity with *Miranda* rights due to his professional, educational and personal history. A waiver is voluntary if it is the product of a free and deliberate choice rather than intimidation, coercion, or deception. A waiver is knowing and intelligent if it has been made with a full awareness of both the nature of the right being

15

abandoned and the consequences of the decision to abandon it.  *Holman v. Kemna*, 212 F.3d 413, 420 (8th Cir.2000), *see also, Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141 (1986). In Defendant Haglof's case the facts support that his waiver of his *Miranda* rights and his decision to speak with Det. Lucca were made knowingly and intelligently.

## II.    CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Defendant's Motion to Suppress Statements and for Suppression of the Fruits of Unlawfully Obtained Statements, be denied.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

*/s/Jillian S. Anderson*
JILLIAN S. ANDERSON, #53918MO
Assistant United States Attorney
111 South 10th Street, Rm. 20.333
St. Louis, Missouri 63102
314-539-2200
jillian.anderson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel for the Defendant.

*/s/ Jillian S. Anderson*
Jillian S. Anderson, Mo. Bar 53918